## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

**KERBY STRACCO,**

        *Plaintiff,*

v.

**TOWN SQUARE MARK CENTER, et al.**

        *Defendants.*

Case No. 1:25-cv-129

### MEMORANDUM IN SUPPORT OF BOZZUTO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendants Town Square at Mark Center ("Town Square"), Bozzuto Management Company ("Bozzuto"), Reading Ave Owner LLC, and Caitland Roberts (collectively, the "Bozzuto Defendants"), by their undersigned counsel and pursuant to FRCP 12(b)(6), respectfully submit this memorandum in support of their motion to dismiss Plaintiff Kerby Stracco's complaint, or, in the alternative, motion for summary judgment.

For the reasons described below, Ms. Stracco has failed to state a sufficient claim for housing discrimination, and the undisputed facts show that the challenged actions were legitimate and non-discriminatory. Her Complaint should therefore be dismissed with prejudice.

### Summary of Allegations and Facts

**I.    Statement of Undisputed Facts**

Ms. Stracco is a resident of Town Square, a multi-family residential apartment complex located in Alexandria, Virginia. Compl. [ECF No. 1]. As of approximately December 17, 2024, Town Square is professionally managed by Bozzuto. *Id.*

919991                                                2

Ms. Stracco's husband purportedly has a disability which impacts his daily functioning, including his ability to navigate stairs. Jan. 31, 2023 Accommodation Request ("Jan. 2023 Accommodation Request"), attached as Exhibit 1. He also allegedly requires assistive devices and "appropriate furniture." *Id.*; Nov. 22, 2024 Accommodation Request ("Nov. 2024 Accommodation Request"), attached as Exhibit 2.

In 2023, Mr. Stracco sought an accommodation to transfer to a sister community without penalty. Jan. 9, 2025 Email from K. Stracco to C. Roberts ("Stracco Email"), attached as Exhibit 3. In the accompanying paperwork, Mr. Stracco stated that due to his difficulty with stairs, it would be in his "best medical interest to live in a dwelling with none to minimal stairs." Jan. 2023 Accommodation Request (Ex. 1). As an additional part of his transfer request, Mr. Stracco also requested waiving the mandatory credit check prior to relocation, and asked to waive the fees from breaking the lease. *Id.* In describing the relationship between his disability and the need for this requested accommodation, Mr. Stracco stated that it was to ensure that he did not "continue to be adversely impacted, financially[,] mentally or physically." *Id.*

The request to transfer without penalty was ***granted***. Stracco Email (Ex. 3). However, the Straccos chose not to complete the transfer process at that time.

In 2024, Ms. Stracco sought an accommodation for "flexibility regarding on time rental payment" due to the cost of making her home accessible for her disabled husband. Nov. 2024 Accommodation Request (Ex. 2). In describing the physical modifications needed, she stated that she was working with multiple non-profits for rent payment. *Id.* When asked to explain the relationship between the disability and the need for the requested accommodation, Ms. Stracco stated that she needed to purchase appropriate furniture for her husband due to the severity of his condition. *Id.*

The request to modify her rent payment due date was ***granted***. *See* Jan. 24, 2025 Letter from J. Bragdon to K. and A. Stracco ("Jan. 2025 Letter"), attached as Exhibit 4.

When Bozzuto assumed management operations of Town Square, Ms. Stracco informed Bozzuto of the accommodations that she had received from the previous owner, Equity Residential. Compl. [ECF No. 1].

Bozzuto confirmed that her request to (1) modify her rent payment due date and (2) terminate her lease prior to its expiration without penalty had both been ***granted***. *See* Jan. 2025 Letter (Ex. 4). Bozzuto also informed the Straccos that Town Square could only review accommodation requests for its own screening process and not for other rental communities with distinct ownership. *Id.* It directed the Straccos to submit any request for an accommodation related to the credit screening process at a different community to that community for review. *Id.*

## II.    Summary of Plaintiff's Allegations

### A. Discrimination Due to Disability and Denial of Accommodations Due to Disability

Ms. Stracco alleges falsely that the Bozzuto Defendants ignored her December 18, 2024 email detailing the accommodations that she had previously received from Equity Residential. Compl. [ECF No. 1]. Ms. Stracco alleges that the Bozzuto Defendants did not respond to her phone calls and emails, prompting her to contact Alexandria City in January 2025. *Id.* When she did speak to Bozzuto, Ms. Stracco claims that Ms. Roberts informed her that Bozzuto does not allow transfers, nor does it provide accommodations for credit checks due to disability. *Id.* She alleges that Ms. Roberts told her that Bozzuto would only allow her to break her lease. *Id.* Ms. Stracco alleges that this was in violation of the Fair Housing Act. *Id.*

Ms. Stracco claims that the Bozzuto Defendants' alleged delay in answering caused her "great injury." *Id.* She further alleges that Ms. Roberts "should have known how harmful it would be to" Ms. Stracco's family to provide the "same answer" and to "deny the accommodations to a disabled veteran family." *Id.*

### B. Ms. Stracco's Other Claims

Ms. Stracco's Complaint also contains conclusory statements with little supporting detail about other claims that she is alleging against the Bozzuto Defendants:

- Ms. Stracco alleges that she is filing suit for personal injury. *Id.* Ms. Stracco's Complaint contains no factual allegations about any personal injury suffered by her or anyone in her unit.

- Ms. Stracco also alleges discrimination against a disabled veteran family. *Id.* Her Complaint contains no factual allegations about discrimination based on her or her family's military status.

- While not stated explicitly, Ms. Stracco implies that Town Square denied an accommodation request to release from her obligation to pay rent. *See id.* She alleges that Equity Residential "had [her] served even though they knew their money was coming from Veterans Affairs SSVF program partners." *Id.*

### <u>Legal Standards</u>

### I. Motion to Dismiss under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). The plausibility standard applies to *pro se* complaints, *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008), but courts liberally construe such complaints, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  Motion for Summary Judgment under Rule 56

Even if a plaintiff makes a *prima facie* showing of discriminatory intent or impact, Defendants may overcome a *prima facie* claim at the initial stage by articulating some "legitimate non-discriminatory reason for the challenged practice." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Among other showings, Defendants may be entitled to summary judgment if they can demonstrate a business necessity sufficiently compelling to justify the challenged practice. *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 988–89 (4th Cir. 1984) (citing *Williams v. Colorado Springs School District # 11*, 641 F.2d 835, 842 (10th Cir. 1981); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). If the landlord comes forward with credible evidence of non-discriminatory purposes for its actions, summary judgment in favor of the landlord is appropriate. *Wadley v. Park at Landmark, LP*, 264 F. App'x 279, 282 (4th Cir. 2008).

## III.  The Fair Housing Act

The Fair Housing Act ("FHA") prohibits discriminatory housing practices based upon a handicap or disability. *See* 42 U.S.C. § 3604(f). Under the FHA, discrimination on the basis of a disability is understood to be "a refusal to make reasonable accommodations in rules, policies,

practices, or services, when such accommodations may be necessary to afford [an individual

with a disability an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

To show that a property should have granted their accommodation request under the

FHA, a tenant must show that the requested accommodation is "(1) reasonable and (2) necessary

to (3) afford the handicapped person equal opportunity to use and enjoy the housing." *Matarese*

*v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 364 (E.D. Va. 2011). An accommodation is

not considered reasonable if it "impose[s] undue financial and administrative burdens." *Id.* To

be considered necessary, an accommodation request must be ***directly linked*** to the person's

disability. *Matarese*, 761 F. Supp. 2d at 364 (dismissing claim due to failure to demonstrate a

"direct linkage" between the proposed accommodation and the disability at issue); Joint

Statement of the Department of Housing and Urban Development and the Department of Justice

"Reasonable Accommodations Under The Fair Housing Act" (May 17, 2004) (To show that a

requested accommodation may be necessary, there must be an identifiable relationship, or nexus,

between the requested accommodation and the individual's disability.). The "necessity"

requirement is "essentially a causation requirement." *Matarese*, 761 F. Supp. 2d at 364. If a

requested accommodation "provides no direct amelioration of a disability's effect, it cannot be

said to be 'necessary.'" *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 604 (4th

Cir. 1997).

Where the disability-related need may not be obvious, a resident may be required to

establish the existence of a disability through third-party documentation. *See* Joint Statement of

the Department of Housing and Urban Development and the Department of Justice, "Reasonable

Modifications Under the Fair Housing Act," (March 5, 2008), at 4 (detailing the types of

documentation that a housing provider may request that verify that a request is linked to a disability in the event that a disability is not obvious).

Courts have regularly clarified that not every tenant complaint regarding housing can be properly stated as a disability discrimination claim. Many jurisdictions have explained that when a tenant asks a landlord to do something the landlord would already be required to do for a non-handicapped tenant, there is no claim under the FHA. *See Costello v. Johnson*, No. 3:11-CV-198, 2011 WL 3820890, at *5 (E.D. Va. Aug. 29, 2011), *aff'd*, 470 F. App'x 102 (4th Cir. 2012) (rejecting disability discrimination claim for failure to remediate mold because the Landlord's duty was identical for all tenants and not specific to residents with disabilities); *Lee v. McCreary,* Civ. A. No. 1:09-CV-2271-RWS, 2010 WL 925173, at *5 (N.D. Ga. Mar. 8, 2010) (explaining that the types of accommodations contemplated by the FHA are those that address problems caused by a person's handicap, ***not*** duties owed to all tenants) (emphasis added); *Lee v. A & W Pritchard Enterprises, Inc.,* No. Civ. A. 3:07-CV-514-H, 2009 WL 3484068, at *2 ("Thus, if a person without the plaintiff's disability would be harmed in the same manner as a person with the plaintiff's disability, there is no claim under the FHA."); *Staton v. Vesta Corp.*, No. 22-CV-00374 (APM), 2022 WL 2663824, at *2 (D.D.C. July 11, 2022) (holding that Plaintiff's complaint failed to state a claim insofar as it was a "mere listing of grievances" against Plaintiff's landlord).

<u>**Argument**</u>

I.    **Individual Defendant Caitland Roberts must be dismissed due to the failure to allege sufficient facts against her.**

Plaintiff has improperly named Ms. Roberts as an individual defendant in this dispute with her landlord, and states no basis upon which relief can be granted against Ms. Roberts. It is clear that any allegations against Ms. Roberts are only in reference to her involvement as a

representative of the corporate landlord defendant, Bozzuto Management Company. Ms.

Roberts is not a housing provider under the Fair Housing Act, and Plaintiff certainly does not

describe any facts supporting an independent claim against Ms. Roberts or individual liability

apart from that of the landlord defendants in this case. As Bozzuto is a named defendant in this

action, Ms. Stracco's claims may be properly resolved without personally naming Ms. Roberts.

For these reasons, as a preliminary matter, Defendant Caitland Roberts should be dismissed with

prejudice.

**II.**    **The Complaint must be dismissed because Ms. Stracco fails to state a claim
of discrimination based on disability under the Fair Housing Act.**

Based on a generous reading of Ms. Stracco's Complaint and accompanying exhibits, it

appears that she is attempting to assert a reasonable accommodation claim under the FHA.

However, even accepting all of Ms. Stracco's allegations as true, her Complaint fails because she

has not demonstrated that any alleged reasonable accommodation request is necessary under the

FHA.

Ms. Stracco's Complaint is devoid of nearly any details regarding the alleged

discrimination against her. Her Complaint contains vague (at best) allegations regarding the

Bozzuto Defendants' alleged failure to timely respond to her email—but she does not allege that

this supposed delay was discriminatory, nor does she elaborate on how this alleged delay injured

her in any way. Additionally, her Complaint by itself provides little to no information on (1)

what her requested accommodations are, (2) how they were related to any disability, and (3) how

their purported denial was discriminatory.

Ms. Stracco furthermore does not demonstrate any linkage, let alone a "direct linkage,"

between any disability and her allegedly denied accommodation requests. For example, Ms.

Stracco fails to demonstrate that her request to waive the mandatory credit check prior to a transfer is related to any disability.

Nor can she: other courts have held that landlords need not modify their "neutral credit and income requirement policies as an accommodation to prospective tenants claiming that their disabilities rendered them impecunious." *Evans v. UDR, Inc.*, 644 F. Supp. 2d 675, 693 (E.D.N.C. 2009). In *Sutton v. Freedom Square Ltd.*, No. 07-14897, 2008 WL 4601372, at *4 (E.D. Mich. Oct. 15, 2008), *aff'd sub nom. Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009), the Eastern District of Michigan held that a tenant's request to relax the landlord's credit requirements was not a reasonable accommodation. In *Sutton*, the tenant alleged that his poor credit was due to his inability to work because of his disability. *Id.* The Court noted that requiring the landlord to overlook the tenant's credit history would "risk … imposing a financial burden on [the landlord]." *Id.* The Court further noted that requiring landlords to "waive credit requirements for disabled applicants would alter the essential nature of [their] operations." *Id.* Finally, the Court noted that the "requested accommodation [went] more towards [the tenant's] economic condition than his disability." *Id.* The Court therefore held that the tenant had not made a *prima facie* case for discrimination under the FHA due to the landlord's alleged failure to accommodate. *Id.* at *5. *See also Schanz v. Vill. Apartments*, 998 F. Supp. 784, 792 n.15 (E.D. Mich. 1998) (stating that FHA did not require property to accommodate plaintiff by waiving standard income and credit requirements because "waiver of such requirements would put plaintiff in a privileged position in relation to other residents"); *Rosenthal v. Hershman*, No. 4:05CV1024 CDP, 2005 WL 3348931, at *3 (E.D. Mo. Dec. 7, 2005) (holding that a tenant's "bad credit is not the same as his disability," and the anti-discrimination laws cited by the tenant (including the FHA) did not "require accommodation of poor credit").

Ms. Stracco's Complaint contains even less of a nexus between the alleged disability at issue and her credit score than in *Sutton*. She fails to provide any reasoning for why she would require a waiver of the mandatory credit check. She makes no allegation that her credit score is related in any way to a disability—she merely states it "doesn't look great." Stracco Email (Ex. 3). Her Complaint therefore does not demonstrate any "causal connection between the alleged disability and the requested accommodation." *Evans*, 644 F. Supp. 2d at 693.

It is therefore unclear how Ms. Stracco's requested accommodations—such as her request for "accommodations regarding the credit checks due to disability"—are related to a medical condition. Because Ms. Stracco has not documented a specific "disability-related need" in this case, for her claim to proceed, Ms. Stracco is required to produce reliable third-party documentation that her requested accommodations are specifically related to a disability-related need. Without such documentation, it would be impossible for the Court to determine whether the requested accommodations were due to a defined disability. Because Ms. Stracco has failed to provide any such documentation, she cannot meet this necessary element of the claim. Her Complaint should therefore be dismissed.

As to Ms. Stracco's other claims, Ms. Stracco provides no details to support any of these conclusory accusations. Regarding her claim for "personal injury," Ms. Stracco's Complaint contains the naked allegation that she has suffered "great injury" from Bozzuto's delay in responding to her requests. Compl. [ECF No. 1]. She provides no details on what that injury is; who suffered the alleged injury; who specifically caused it; or how an alleged delay in answering could cause injury. Ms. Stracco fails to plausibly allege a personal injury claim.

Regarding her claim for discrimination based on veteran status, she again provides no detail to support this claim. She makes no connection between her status as a veteran and any of

her accommodation requests, and she does not specify any instance of alleged discrimination that occurred based on her or her family's military status. Nor can she: veteran status is not a protected class under the Fair Housing Act. *See* 42 U.S.C. § 3604(b) (not including military status as a protected class). Regardless, the Bozzuto Defendants specifically deny any claims of discrimination based on the military status (or on any other basis) of Ms. Stracco or any of her family members. Because Ms. Stracco has not plausibly alleged discrimination based on her military status, this claim must be dismissed.

Finally, to the extent that Ms. Stracco is claiming that she should be reasonably accommodated by not being required to pay her rent, she has provided scant facts to support such a claim. Her Complaint contains vague allegations that she allegedly received "accommodations regarding payment of rent" without clarifying what those accommodations were. Compl. [ECF No. 1]. She also accuses Equity Residential of having her "served even though they knew their money was coming from Veterans Affairs SSVF program partners." *Id.* Equity Residential Management LLC had filed an unlawful detainer suit against Mr. and Ms. Stracco on January 21, 2025.[1] Ms. Stracco's Complaint fails to explicitly allege this claim, and she provides no factual allegations demonstrating that her request not to pay rent is related to any disability. She therefore fails to plausibly allege that her request not to pay rent should have been granted.

---

[1] The Court may consider, on a motion to dismiss, Equity Residential's lawsuit against Ms. Stracco. When deciding a motion to dismiss, the Court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). The lawsuit against Mr. and Ms. Stracco is a matter of public record and, despite not being incorporated into the Complaint, may be considered by the Court on a motion to dismiss.

III.    **In the alternative, the Bozzuto Defendants are entitled to summary judgment because Town Square approved Ms. Stracco's reasonable accommodation requests.**

Even if this Court were to find that Ms. Stracco's Complaint meets the technical requirements to plead a discrimination claim, she cannot demonstrate that she faced reasonable accommodation discrimination under the FHA. Bozzuto *approved* Ms. Stracco's reasonable accommodation requests in compliance with federal and local laws.

First, Ms. Stracco's claim that Town Square denied the Stracco's request to transfer apartments is false. Mr. Stracco first requested to transfer from Town Square on or about January 31, 2023. Jan. 2023 Accommodation Request (Ex. 1). His request to transfer without penalty was granted on or about February 10, 2023, by Equity Residential. *See* Stracco Email (Ex. 3). The Straccos chose not to pursue that transfer for the next two years. Years later, when Ms. Stracco then requested to be permitted to terminate her lease prior to its expiration without penalty, Bozzuto granted this request. *See* Jan. 2025 Letter (Ex. 4).

Second, Ms. Stracco's request for flexibility regarding her rental payment due date was similarly granted. *Id.* Town Square modified Ms. Stracco's rent payment date to coordinate with her support services payments. *Id.*

Because the undisputed facts demonstrate that Town Square granted the Straccos' disability-related accommodation requests, there is no basis to find that the Bozzuto Defendants discriminated against the Straccos.

IV.    **The Bozzuto Defendants are entitled to summary judgment to the extent that their challenged actions are based on a legitimate, non-discriminatory purpose consistent with their business necessity.**

The Court should also grant summary judgment in favor of the Bozzuto Defendants to the extent that any challenged denials of accommodation requests were based on a legitimate, non-discriminatory justification.

First, with regard to Ms. Stracco's request to waive the credit screening process, as discussed above, Ms. Stracco's Complaint fails to demonstrate that this request was related to any disability. However, even if she could demonstrate a nexus between the two—which she cannot—her request was not denied for any discriminatory reason. The Straccos did not request that Town Square waive the credit screening process to transfer to another unit at Town Square. *See* Jan. 2023 Accommodation Request (Ex. 1). Town Square can only review accommodation requests for its own screening process; it does not have the capability to waive the screening process for other properties that are owned by other entities. *See* Jan. 2025 Letter (Ex. 4). The Straccos' "request" was logistically impossible for Town Square to grant, and to change the policy would pose an undue administrative burden. Town Square's "denial" of this request was therefore not discriminatory.

Second, to the extent that Ms. Stracco's Complaint alleges that she should have been released from her obligation to pay rent, this request likewise was not denied for any discriminatory reason. To require a landlord to accommodate a tenant's request to not pay rent is not reasonable because it would impose an undue financial burden on the Bozzuto Defendants. *See Klossner v. IADU Table Mound MHP, LLC*, 65 F.4th 349, 354 (8th Cir.), *cert. denied*, 144 S. Ct. 328 (2023) ("A landlord's duty to make reasonable accommodations extends to direct amelioration of handicaps, but does not encompass an obligation to accommodate a tenant's

shortage of money, and the far-reaching implications that such an obligation would entail." (citations and quotations omitted)).  Furthermore, to allow Ms. Stracco to not pay her rent would not provide her with "equal" access under the FHA, but instead would provide her with preferential treatment—she would be granted a rent concession not granted to any other person, disabled or not.  This is not a proper request under the FHA.  *See Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640. 644 (11th Cir. 2015) (holding that request for free parking space on the retail level was not a reasonable accommodation because no other resident had this access, and granting it would have placed the resident "in a better position than all other residents, disabled and non-disabled alike").  Thus, to the extent any request was denied, it is undisputed that such a denial was for proper reasons, and therefore summary judgment should be granted in favor of defendants as a matter of law.

### Conclusion

For the foregoing reasons, Defendants Town Square at Mark Center, Bozzuto Management Company, Reading Ave Owner LLC, and Caitland Roberts respectfully request, pursuant to Federal Rule of Civil Procedure 12(b)(6), that the Court dismiss Plaintiff Kerby Stracco's Complaint [ECF 1] with prejudice.

919991                                        15

Respectfully submitted,

**GALLAGHER EVELIUS & JONES LLP**

James D. Bragdon (VA. Bar # 83681)
Elizabeth A. Caldera (pro hac vice motion
forthcoming)
218 North Charles Street, Suite 400
Baltimore, Maryland 21201
(410) 727-7702
jbragdon@gejlaw.com
ecaldera@gejlaw.com

*Attorneys for Defendants Town Square at Mark
Center, Bozzuto Management Company, Reading
Ave Owner LLC, and Caitland Robert*

919991

16